IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MOHAMAD EZZEDDINE,<br><br>                        Appellant,<br><br>             v.<br><br>CITY OF BURIEN,<br><br>                      Respondent. | No. 88598-7-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. —This case concerns the statutory requirements for filing and serving a municipality with a land use petition under the land use petition act (LUPA) ch. 36.70C RCW. The LUPA sets strict timelines to complete filing and service, with a three-day tolling provision applicable to land use decisions that are "mailed." RCW 36.70C.040(4)(a). Ezzeddine's filing and service of his land use petition did not comply with the strict requirement of RCW 36.70C.040(3). We affirm the trial court's summary judgment dismissal of Ezzeddine's land use petition.

FACTS

In 2021, Mohamad Ezzeddine purchased property located in the city of Burien (City). In 2024, after receiving a report that Ezzeddine was operating an Airbnb business on the property without a permit, the City visited the property in question. During the visit, code enforcement officer Michael Amaya saw structures on the property matching listings on Airbnb. The City also observed

"several lettered parking spaces" near the driveway. When asked about and shown the Airbnb listings advertising structures on the property as available for short-term rentals, Ezzeddine stated the listings were a "future aspiration."

Based on the Airbnb listings, the City suspected the A-frame and white shed structures lacked proper construction and building permits for amenities, such as electricity and plumbing. As part of its investigation, the City also referenced aerial photographs, a preliminary Geotech Evaluation, and a draft critical area report, to determine the observed A-frame structure, bridge, and man-made pond were constructed within 50 feet of an "Ns"[1] class stream, in violation of Burien Municipal Code (BMC). Burien's and King County's permitting systems yielded no records of requisite permits for conducting business physically in Burien, construction, or compliance with the stream buffer.

The City advised Ezzeddine to remove all Airbnb listings associated with the property until he acquired appropriate permits and posted placards on the four structures marking them as "Unfit for Human Occupancy."

Months later, the City visited Ezzeddine's property again, where it observed the previously posted "Unfit for Human Occupancy" notices were removed, the previously observed violations remained, and all four structures' Airbnb listings were active.

Thereafter, the City mailed two notices of civil violations to Ezzeddine on June 13, 2024, and August 6, 2024. Ezzeddine requested an administrative

---

[1] "Non-seasonal stream."

hearing to contest the violations. At the first administrative hearing, Ezzeddine did not dispute the violations but questioned the City's evidence, namely the accuracy of their aerial photographs, geographic information system (GIS) maps, screenshots of Airbnb listings, and the accuracy of Burien and King County's permitting systems. Ezzeddine also claimed the second violation notice was improperly served, and the City improperly posted an "Unfit for Human Occupancy" sign on the residential structure as it was not cited as a structure in violation of BMC.

At the end of the hearing, the hearing examiner left the record open to allow the City to respond to the exhibits Ezzeddine presented on the day of the hearing. A second hearing was held to address the rebuttal materials. Ezzeddine, again, did not dispute his violations but disputed the accuracy of the City's evidence and accuracy of a witness's recollection.

On March 12, 2025, the hearing examiner entered a written decision finding that substantial evidence supported four out of the five cited violations, dismissing one violation. The hearing examiner found the City's evidence of aerial photographs, witnesses' testimony, and the permitting system's absence of records supported the violations. Although the trial court found Ezzeddine made some headway poking holes in the accuracy of the City's permitting system, overall, the court found it did not override Ezzeddine's lack of evidence that requisite permits existed during periods of building and modification to his property.

The hearing examiner sent the decision to Ezzeddine by e-mail and regular mail on the same day. The "Right of Appeal" section of the decision contained an advisement that "[a]ppeals must be served and filed within 21 days of issuance of this decision as specified in LUPA."

On April 2, 2025, at 4:02 p.m., Ezzeddine sent an e-mail to City of Burien Administrative Assistant Michele Barrera, the City's legal counsel, and to an individual whose e-mail address appeared to be a law firm. In the e-mail, Ezzeddine wrote "Hello All. I just filed an LUPA appeal for the hearing examiner's decision on March 12." In her capacity as Administrative Assistant, Barrera processes and maintains records related to code enforcement and legal proceedings, which included the records of Ezzeddine's LUPA case. Barrera stated that none of the three recipients of the e-mail and the attached LUPA petition were designated agents to receive the LUPA. On April 7, 2025, Ezzeddine filed and served an amended LUPA petition via electronic and personal service.

King County Superior Court received the e-filing of the LUPA petition on April 2, 2025. On the same day of receipt, the court issued a case schedule order setting the matter for hearing on September 8, 2025. The City filed a motion for summary judgment to dismiss Ezzeddine's amended LUPA petition. On July 17, 2025, trial court granted the motion, finding that Ezzeddine's untimely appeal of the hearing examiner's land use decision deprived the court of subject matter

4

jurisdiction under RCW 36.70C.040(2)-(3).[2] Ezzeddine moved for reconsideration, which was denied.

Ezzeddine timely appealed.

ANALYSIS

Ezzeddine contends the trial court erred in dismissing his Land Use Petition because it did not consider the three-day mailing extension. We disagree.

A trial court's order granting summary judgment is reviewed de novo, performing the same inquiry as the trial court. Gardens Condo. v. Farmers Ins. Exch., 2 Wn.3d 832, 838, 544 P.3d 499 (2024). "We may affirm an order granting summary judgment if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Berst v. Snohomish County, 114 Wn. App. 245, 251, 57 P.3d 273 (2002). "A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation." Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). "When determining whether an issue of material fact exists, [we] must construe all facts and inferences in favor of the nonmoving party." Ranger, 164 Wn.2d at 552.

We also review land use decisions de novo. "Judicial review of land use decisions is governed by Land Use Petition Act (LUPA)." Whatcom County Fire

_____

[2] The trial court also found Ezzeddine failed to demonstrate statutory grounds for relief under RCW 36.70C.130(1); the Hearing Examiner's final decision was supported by substantial evidence and was not legally erroneous; and there were no genuine issues of material fact.

Dist. No. 21 v. Whatcom County, 171 Wn.2d 421, 426, 256 P.3d 295, 297 (2011) (citing Griffin v. Thurston County Bd. of Health, 165 Wn.2d 50, 54, 196 P.3d 141 (2008)). Appellate courts sit in the same position as the superior court and apply the standards set forth in RCW 36.70C.130(1) to the administrative record that was before the body responsible for the land use decision. Griffin, 165 Wn.2d at 54–55 (citing Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wn.2d 740, 751, 49 P.3d 867 (2002)).

In 1995, LUPA was enacted to provide for "the exclusive means of judicial review of land use decisions" made by local jurisdictions. RCW 36.70C.030(1). A "land use decision" is a final determination made by a local jurisdiction. RCW 36.70C.020(2). Local jurisdictions include incorporated towns, counties, or cities. RCW 36.70C.020(3). The local jurisdiction in this case is the municipality of Burien.

LUPA's statutory purpose is to "establish[ ] uniform, expedited appeal procedures" that "provide consistent, predictable, and timely judicial review." RCW 36.70C.010. "A land use petition is barred, and the court may not grant review, unless the petition is timely filed with the court and timely served on the . . . local jurisdiction." RCW 36.70C.040(2)(a).

Within the context of LUPA, "a superior court acts in an appellate capacity" and cannot exercise its jurisdiction unless LUPA's service and filing requirements are satisfied. Conom v. Snohomish County, 155 Wn.2d 154, 157, 118 P.3d 344 (2005). A superior court that lacks appellate jurisdiction must dismiss a LUPA petition. Conom, 155 Wn.2d at 157.

6

Service of a LUPA petition on a municipality is governed by RCW 36.70C.040 and RCW 4.28.080. Both statutes impose strict requirements for service of petitions. Service of the petition on a municipality "must be by delivery of a copy of the petition to the office of a person identified by or pursuant to RCW 4.28.080 to receive service of process, or as otherwise designated by the local jurisdiction." RCW 36.70C.040(5). RCW 4.28.080 specifies that the mode of service is "personal service." That same statute further specifies that personal service on a municipality must be made on one of the following persons: "the mayor, city manager, or, during normal office hours, to the mayor's or city manager's designated agent or the city clerk thereof." RCW 4.28.080(2).

Additionally, LUPA requires a petitioner to file a petition for review within 21 days of the date of the land use decision. RCW 36.70C.040(3). This is a "stringent" deadline. Asche v. Bloomquist, 132 Wn. App. 784, 795, 133 P.3d 475 (2006), review denied, 159 Wn.2d 1005 (2007). It reflects a strong public policy of finality in land use decisions. Samuel's Furniture Inc. v. Dep't of Ecology, 147 Wn.2d 440, 458-59, 54 P.3d 1194 (2002). Even illegal land use decisions will be allowed to stand if not timely challenged under LUPA. Habitat Watch v. Skagit County, 155 Wn.2d 397, 407, 120 P.3d 56 (2005).

LUPA provides two mutually exclusive pathways for determining the date a written decision is issued. RCW 36.70C.040(4)(a). The issuance of a written decision is either "[t]hree days after a written decision is mailed by the local jurisdiction or, if not mailed, the date on which the local jurisdiction provides notice that a written decision is publicly available." RCW 36.70C.040(4)(a). A

7

written decision that is "mailed" is considered "issued" three days after it is sent. Chandrruangphen v. City of Sammamish, ___Wn.3d ___, 583 P.3d 604, 610 (2026). By contrast, LUPA expressly authorizes written decisions that are "not mailed," and the decision is considered "issued" on the date notice is provided that a "decision is publicly available." RCW 36.70C.040(4)(a).

In this case, Ezzeddine made two attempts to serve the City. While Ezzeddine's first attempt on April 2 was made within LUPA's 21-day deadline, he did not comply with the LUPA requirements because service was defective. Ezzeddine did not follow the service requirement under RCW 4.28.080(2) in two ways: he e-mailed, rather than personally served the petition; and the petition was e-mailed to the wrong individuals because they were not the mayor, city manager, or the mayor's or city manager's designated agent or the city clerk.

Ezzeddine's second attempt on April 7 was outside the 21-day deadline. The 21-day limitations period begins to run on the date a land use decision is issued. RCW 36.70C.040(2), (3). For purposes of LUPA, when a decision is "issued" depends on whether a decision is "written," "made by ordinance or resolution," or, if neither of those options applies, "the date the decision is entered into the public record." RCW 36.70C.040(4)(a)-(c). On March 12, 2025, the hearing examiner sent the decision to Ezzeddine by e-mail and regular mail.

Because the order was mailed, and not solely e-mailed, the date of issuance was March 15, 2025. Chandrruangphen, 583 P.3d at 610 (concluding LUPA's three-day tolling provision does not apply to decisions transmitted solely

by e-mail). Twenty-one days after March 15 was April 6 not April 7, making Ezzeddine's second service attempt on April 7 untimely.

Ezzeddine's land use petition is barred, and the court may not grant review. RCW 36.70C.040(2). Our Supreme Court has stated that land use decisions become unreviewable if not appealed to a superior court within LUPA's specified timeline. See Habitat Watch, 155 Wn.2d at 407. Trial court did not err in granting summary judgment dismissal of Ezzeddine's land use petition.

Ezzeddine requested an award of attorney fees, but he provides no argument to support the awarding of fees and is not the prevailing party.[3] Thus, his request is denied.

We affirm, and we deny Ezzeddine's request for attorney fees.

_Bui, J._

WE CONCUR:

_Díaz, J._        _Mann, J._

---

[3] A party must "devote a section of its opening brief to the request for the fees or expenses." RAP 18.1(b). "Argument and citation to authority are required under the rule to advise us of the appropriate grounds for an award of attorney fees as costs." Wilson Ct. Ltd. P'ship v. Tony Maroni's, Inc., 134 Wn.2d 692, 710 n.4, 952 P.2d 590 (1998)). Requests that fail to comply with these requirements are properly denied. Thompson v. Lennox, 151 Wn. App. 479, 485, 151 P.3d 597 (2009). Even if Ezzeddine complied with RAP 18.1(b), he is not the prevailing party, thus fees would still be denied. RAP 18.1(a).